FILED

February 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 12-0725

DA 12-0725

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 53N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

RICHARD JOSEPH JENKINS,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC 11-34
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Wade Zolynski, Chief Appellate Defender; Jacob Q. Johnson; Koan

Mercer, Assistant Appellate Defenders; Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General; Micheal S. Wellenstein, Assistant Attorney General; Helena, Montana

Nickolas C. Murnion, Valley County Attorney; Glasgow, Montana

Submitted on Briefs:  January 28, 2015

Decided:  February 24, 2015

Filed:

_____

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     On April 23, 2012, a jury found Richard Jenkins guilty of kidnapping, assault with a weapon, intimidation, and two counts of misdemeanor assault.  The convictions arose from Jenkins' involvement in forcing a sewing needle into a female friend's knee, as well as cutting his girlfriend, Connie Sharp, with a knife, burning her with cigarettes, tying her up, and threatening to throw her in a river if she refused to drive him and his co-defendant from Glasgow to Kalispell, Montana.  As part of Jenkins' sentencing, the District Court ordered restitution for pecuniary losses occurring as a result of his actions, including $18,000 for Sharp's future counseling and treatment.  He was made jointly and severally liable for these costs with his co-defendant.  Jenkins appeals the District Court's order to pay for future costs, arguing that Sharp suffered no pecuniary loss because she qualified for payment of her costs by state-assisted programs.

¶3     Section 46-18-201(5), MCA, provides that if a person is found guilty of an offense and a judge finds the victim has sustained a pecuniary loss, payment of full restitution is

required. A victim is defined in § 46-18-243(2)(a)(i)(A), MCA, as including a person who has suffered bodily injury as a result of the commission of an offense. Additionally, § 46-18-243(1)(c), MCA, provides that pecuniary loss includes future medical expenses a victim can reasonably be expected to incur as a result of an offender's criminal conduct, including the cost of psychological counseling, therapy, and treatment.

¶4 A district court's application of the terms "victim" and "pecuniary loss," which are necessary to determine restitution, involves a mixed question of law and fact. *State v. Jent*, 2013 MT 93, ¶ 9, 369 Mont. 468, 299 P.3d 332. A district court's factual findings will not be disturbed unless clearly erroneous, but whether the facts satisfy the legal standard is reviewed de novo. *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254. A finding of fact is clearly erroneous if not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction a mistake has been made. *Jent*, ¶ 10. Substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion. *Johnston v. Palmer*, 2007 MT 99, ¶ 26, 337 Mont. 101, 158 P.3d 998 (citations omitted).

¶5 At trial, the pre-sentence investigation report included an affidavit from Sharp, in which she estimated her future costs for counseling and mental health treatments to be $18,000. In support of this estimation, Sharp's therapist indicated that she would need

20-40 individual health outpatient sessions with Sharp per year for one or two years, or approximately 50 hours of case management and therapeutic services per year. A memorandum from Sharp's treating mental health center was also offered, indicating that Sharp's services were billed at $100/hour. Further, the memorandum noted that, while the services were currently being paid through state assisted programs, Sharp would be charged should the payments cease.

¶6      Jenkins argues there is no indication Sharp will ever incur actual expenses due to payments made by state programs, and she thus fails to meet the requirements of § 46-18-201, MCA. Jenkins offers that, if he were to pay restitution, Sharp would effectively receive a windfall. In response, the State argues that Jenkins' appeal is nothing more than an attempt to avoid responsibility for paying counseling costs even though they are a direct result of his criminal conduct. The State further offers that, if the state programs continue to cover the cost of the therapy and counseling, the programs may be entitled to recoupment should Jenkins begin to pay.

¶7      Section 46-18-201(5), MCA, requires full payment of restitution in instances of pecuniary loss. It was clearly established at sentencing that Sharp was in need of counseling due to the actions of Jenkins. There was sufficient information to allow the District Court judge to approximate Sharp's pecuniary loss and to impose restitution. The fact that Sharp's costs have been covered by a state program does nothing to affect

Jenkins' obligation under the statute to pay restitution for Sharp's costs. Payment by a third party does not obviate Jenkins' responsibility under the law. When Jenkins begins making restitution payments, any state programs that have previously paid for Sharp's counseling costs can pursue repayment from Sharp.

¶8 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶9 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT